**In re EXCEL ENGINEERING, INC., debtor,**

**LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, plaintiff.**

**v.**

**EXCEL ENGINEERING, INC., and Job Rentals and Sales, Inc. and International Fidelity Insurance Company.**

**Bankruptcy No. 96–34300(3)11. Adversary No. 97–3127.**

United States Bankruptcy Court, W.D. Kentucky.

April 10, 1998.

Richard A. Schwartz, Louisville, KY, for Excel Engineering, Inc.

*MEMORANDUM-OPINION*

J. WENDELL ROBERTS, Bankruptcy Judge.

A review of the history and files of this case reflect that Job Rentals has engaged in a zealous quest to collect a mere $16,501.21, but failed to request this Court terminate the stay. Its actions have, without question, caused the parties to expend sums far greater than that on attorneys fees and costs. This case underscores the wisdom of alternative ways of settling disputes—such as, mediation or arbitration—where, a facilitator cuts to the heart of the issue without the parties filing 86 pages of legal memorandums plus attachments.

The Plaintiff, Louisville and Jefferson County Metropolitan Sewer District ("MSD"), filed this Adversary Proceeding as an interpleader action. MSD presently holds in its possession a fund of money amounting to $18,093.74, $16,501.21 of which is the subject of dispute in this action. MSD owes this money for work done on a construction project, and seeks by this interpleader action a judicial determination of which party should be paid the money: (1) Excel Engineering, Inc. ("Excel"), the general contractor; or (2) Job Rentals and Sales, Inc. ("Job Rentals"), the subcontractor. Accordingly, MSD has named both entities as Defendants in this action along with International Fidelity Insurance Co. ("Fidelity"), the insurer on the indemnity bond issued in connection with the construction project.

All three Defendants filed Counterclaims against MSD. In addition, Job Rentals filed a Crossclaim against both Excel and Fidelity. Excel filed a Crossclaim against Job Rentals, only. Fidelity has filed no Crossclaims.

This matter is presently pending before this Court on the numerous following motions: (1) Fidelity's Motion for Summary Judgment with regard to MSD's Complaint and Job Rentals' Crossclaim; (2) Job Rentals' Cross-Motion for Summary Judgment; (3) MSD's Motion for Leave to File its Second Amended Complaint of Interpleader; (4) Excel's Motion for Partial Summary Judgment on MSD's interpleader claim; (5) Excel's Motion to Show Cause Why Job Rentals and MSD Should Not Be Held in Contempt for Violation of the Automatic Stay; and (6) Job Rentals' Motion to Amend its Counterclaim.

Having fully reviewed all of the briefs, motions and supporting Memorandums filed in this case, and for the reasons set forth below, this Court finds that Job Rentals does not have an enforceable mechanic's lien on the funds at issue, and therefore, is an unsecured creditor. Accordingly, the Court holds that Excel is the proper party to whom payment of the funds is owed. Consequently, the Court will sustain Excel's Motion for Partial Summary Judgment and order MSD to pay the funds at issue to Excel. The Crossclaims running between Excel and Job Rentals set forth a contract dispute which raises into issue the actual amount owed by Excel to Job Rentals pursuant to the Subcontract. Those Crossclaims entail factual disputes, and shall remain unaffected by the Court's ruling on Excel's Partial Motion for Summary Judgment.

Job Rentals' Counterclaim against MSD and Fidelity's Counterclaim against MSD both concern the party entitled to payment of the funds which are the subject of this interpleader action. Thus, both Counterclaims are resolved by the Court's determination that the funds are to be paid to Excel.

The remaining claims do not involve Excel, the Debtor in this bankruptcy action. Rather, they are confined to claims involving only the other three parties: MSD, Job Rentals and Fidelity. Those claims were originally

the subject of a Jefferson Circuit Court action involving those same three parties, *Job Rentals & Sales, Inc. v. The Louisville and Jefferson County Metropolitan Sewer District and International Fidelity Insurance Co.,* Case No. 96–CI–07321. Because the remaining claims involve entities not party to the underlying bankruptcy action and involve matters of state law, the state court is the more appropriate forum for the litigation of those claims. Accordingly, the remaining two claims shall be remanded back to state court: (1) MSD's Claim against Fidelity, and (2) Job Rentals' Crossclaim against Fidelity. The following Motions presently pending before the Court directly relate to those claims: (1) Fidelity's Motion for Summary Judgment with regard to MSD's Complaint and Job Rentals' Crossclaim; (2) Job Rentals' Cross–Motion for Summary Judgment; and (3) MSD's Motion for Leave to File its Second Amended Complaint of Interpleader. In addition, Job Rentals' presently pending Motion to Amend its Counterclaim against MSD seeks to assert a new claim against MSD for failure to obtain a bond for Job Rentals' protection. The proposed Amended Counterclaim raises yet another claim involving Job Rentals and MSD, neither of which are parties to the bankruptcy, and which involves matters of state law. Accordingly, the Court shall refrain from ruling on these matters, and shall defer to the state court.

With regard to Excel's Motion to Show Cause Why MSD and Job Rentals Shall Not be Held in Contempt for Violation of the Automatic Stay, the Court finds for the reasons set forth below, that Job Rentals has engaged in litigation over the construction money fund at issue, despite the fact that it had knowledge that Excel claimed an interest in the fund as property of its bankruptcy estate. Thus, Job Rentals knew or should have known that the Bankruptcy Court was the proper forum for litigation concerning that fund. Accordingly, Job Rentals shall be held in contempt for its persistent violation of the stay during the nine month period beginning with Job Rentals' efforts to file and perfect a lien on the funds, which efforts commenced on September 26, 1996, and ending with MSD's filing of this interpleader action on June 20, 1997.

## *FACTS*

On December 29, 1995, MSD entered into a construction contract with Excel. Pursuant to the Contract, Excel agreed to be general contractor on an MSD project known as the Anna Marie Drive Drainage Project.

In connection with this project, Excel entered into several subcontracts, among which was a supply contract with Sellersburg Stone Company ("Sellersburg") and an equipment lease contract with Job Rentals.

As general contractor on the MSD construction project, Excel was required by its contract to procure an indemnity bond. Excel obtained the required bond from Fidelity, in the amount of $223,058.00. Excel was identified as the principal on that bond, and MSD was designated as the "obligee."

The purpose of the bond was to guarantee Excel's obligation to pay its suppliers and subcontractors for labor and materials provided for the project. Specifically, the bond created an obligation on behalf of Fidelity to MSD in the event Excel failed to indemnify and hold harmless MSD from claims of unpaid subcontractors and suppliers.

### A. *JOB RENTALS' LIEN CLAIM.*

Excel entered into its equipment lease contract with Job Rentals on April 10, 1996. In accordance with that contract, Job Rentals provided Excel with equipment necessary for the MSD construction project. For reasons not completely clear from the record, Excel failed to make payment to Job Rentals pursuant to their contract. Excel asserts a contract dispute with Job Rentals regarding the actual amount owed to Job Rentals under the terms of the contract. That contract dispute appears to center, for the most part, around the appropriate charge for the equipment provided by Job Rentals on days when there was inclement weather. Additionally, Excel disputes certain charges for loss and damage insurance, and for fuel and freight.

On September 20, 1996, Excel filed for bankruptcy. Six days thereafter, on September 26, 1996, Job Rentals filed a Statement of Lien pursuant to K.R.S. 376.210 et seq., in

the Jefferson County Clerk's office. Job Rentals asserts that it was unaware that Excel had filed for bankruptcy at the time Job Rentals filed its Statement of Lien.

The public improvement lien process, set out in K.R.S. 376.250, allows a contractor (i.e., Excel) 30 days in which to protest such a lien statement. This deadline was extended due to Excel's bankruptcy by operation of 11 U.S.C. § 108(b)(2). Under that provision of the Bankruptcy Code, the deadline was extended to 60 days from the Order of Relief, or November 20, 1996. Excel made a timely protest to Job Rentals' Statement of Lien, on November 18, 1996.

Under K.R.S. 376.250, Job Rentals then had 30 days from Excel's protest to institute a lawsuit. The 30 day period expired on December 18, 1996. Two days later on December 20, 1996, Job Rentals instituted its lawsuit in Jefferson Circuit Court, naming MSD and Fidelity as Defendants. Excel was not named as a party to that lawsuit. Job Rentals' Complaint sought four things:

(1) A lien against the construction project funds held by MSD;

(2) A determination and adjudication of the validity of Job Rentals' "liens against the funds due Excel;"

(3) That MSD be ordered to pay Job Rentals' claims out of the project funds held by MSD; and

(4) A Judgment against Fidelity in the sum of $16,501.21, plus interest, attorney's fees and the $9.00 cost of filing the Statement of Lien.

Job Rentals additionally filed an insurance claim with Fidelity against the indemnity bond.

The Court notes that Job Rentals failed to file a Proof of Claim in Excel's bankruptcy action, and the Claims Bar Date has long passed.

### B. *SELLERSBURG'S LIEN CLAIM.*

On September 27, 1996, one day after Job Rentals filed its Statement of Lien, Sellersburg likewise filed a lien claim. That claim, which was in the amount of $1,592.53, was ultimately settled via an Agreed Order between Excel and Sellersburg, entered by this Court on June 5, 1997. Despite the settlement of this claim, MSD still holds that portion of the construction project funds due Sellersburg.

### C. *MSD'S INTERPLEADER ACTION.*

MSD presently holds the construction project funds, which are the subject of this dispute. The "Fund" totals $18,093.74. Of that amount, Job Rentals claims $16,501.21, with Sellersburg entitled to the remaining $1,592.53.

Excel filed for bankruptcy on September 20, 1996, and Job Rentals filed its state court action on December 20, 1996. Thereafter, on April 17, 1997, MSD filed a Motion to Dismiss Job Rentals' State Court Complaint, based on Job Rentals' failure to join Excel as an indispensable party and for failure to comply with K.R.S. 376.250. In the Motion, MSD argues that Job Rentals did not comply with the procedural deadlines required by the public mechanic's lien statute, K.R.S. 376.250; and therefore, Job Rentals' lien claim should be dismissed.

On June 20, 1997, MSD instituted this action by filing a "Complaint of Interpleader," requesting the Court to determine the rights of Excel and Job Rentals to $16,501.21 of the contract funds. Five days later, on June 25, 1997, MSD filed a Motion to hold the state court action in abeyance due to Excel's bankruptcy action.

### D. *EXCEL'S CROSSCLAIM AGAINST JOB RENTALS.*

Excel has filed a Crossclaim against Job Rentals, in which it asserts that:

(a) Job Rentals made improper charges for the equipment it supplied on days where there was inclement weather;

(b) Certain charges such as, charges for loss and damage insurance, and for fuel and freight were not agreed to;

(c) Job Rentals initiated and continued to litigate the state court action in violation of the automatic stay;

(d) Job Rentals' lien was released due to its failure to meet the statutory proce-

dural deadlines for enforcing its lien, thereby invalidating the lien.

### E. *EXCEL'S COUNTERCLAIM AGAINST MSD.*

Excel filed a Counterclaim against MSD, asserting MSD owes it the $16,501.21 presently held in the "contract fund," and which is the subject of this interpleader action. Excel asserts that it is entitled to the funds because Job Rentals' lien claim was filed post-petition in violation of the automatic stay, and is additionally invalid for failing to comply with the statutory requirements for enforcing that lien. Thus, Excel claims, the lien was dissolved by operation of law. Excel also asserts that Job Rentals is not entitled to the funds due to its failure to file a Proof of Claim.

### F. *FIDELITY'S COUNTERCLAIM AGAINST MSD.*

Fidelity filed a Counterclaim against MSD, in which it asserts that MSD has wrongfully failed to pay Job Rentals' claim. Fidelity agrees that the amount owed to Job Rentals is $16,510.21 and states that MSD should be compelled to pay Job Rentals that amount.

### G. *JOB'S CROSSCLAIM AGAINST EXCEL.*

Job Rentals has filed a Crossclaim against Excel, alleging breach of contract for Excel's failure to pay Job Rentals pursuant to the terms of their contract.

### H. *JOB'S CROSSCLAIM AGAINST FIDELITY.*

Job Rentals has filed a Crossclaim against Fidelity asserting it is entitled to payment on the bond issued by Fidelity, as it is the third-party beneficiary of that bond. Excel has failed to pay Job Rentals. Thus, Job Rentals asserts, as third-party beneficiary of the bond, it is entitled to payment from Fidelity.

### I. *JOB'S COUNTERCLAIM AGAINST MSD.*

Job Rentals has filed a Counterclaim against MSD, asserting MSD is holding funds to which Job Rentals is entitled.

## *LEGAL DISCUSSION*

### I. *SUMMARY JUDGMENT*

In considering a motion for summary judgment, the question presented to this Court is whether there is "no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This Court cannot try issues of fact on a Rule 56 motion, but is authorized to determine whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court held that "in filing a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden; i.e., whether a jury could reasonably find either the plaintiff proved his case by the quality or quantity of evidence required by the law or that he did not." *Id.,* 477 U.S. at 254, 106 S.Ct. 2505.

When ruling on a motion for summary judgment, the inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. By granting summary judgment, the Court is concluding that based on the evidence upon which the nonmoving party intends to rely at trial, no reasonable fact finder could return a verdict for the nonmoving party. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985).

The moving party carries the initial burden of proof by informing the Court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Once the moving party has produced such evidence, the nonmoving party must then direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. In other words, the nonmoving party must come forward with evidence establishing that it has a viable cause of action. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *First National*

*Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

In this case, Excel has made a Motion for a Partial Summary Judgment with regard to MSD's interpleader claim. The determination of the proper party to receive payment of the construction project funds that are the subject of that claim turns on the issue of whether Job Rentals had a valid, enforceable lien against those funds. The Court finds that the material facts with regard to that limited issue are not in dispute and establish, for the reasons set forth below, that Job Rentals did not have a valid, enforceable lien against the funds. Consequently, Excel is entitled by law to a judgment directing MSD to pay the funds to Excel's bankruptcy estate.

The Court notes that factual issues still remain with regard to the contract dispute between Excel and Job Rentals, which is the subject of the Crossclaims running between those two parties. Thus, those Crossclaims shall remain unaffected by the Court's ruling on Excel's Motion for Partial Summary Judgment.

### A. *JOB RENTAL'S LIEN WAS INVALID AND UNENFORCEABLE.*

Job Rentals' asserted lien against the construction project funds held by MSD is invalid and unenforceable, as a matter of law, for two reasons: (1) Job Rentals filed the Statement of Lien six days after Excel filed its Bankruptcy Petition, in violation of the automatic stay provisions of 11 U.S.C. § 362; and (2) Job Rentals' lien was not properly perfected due to Job Rentals' failure to file a lawsuit within 30 days of Excel's protest to Job Rentals' lien, as is required by K.R.S. 376.250(4). Kentucky's Lien Statute specifically provides that in such case, the lien shall be *automatically released* and the funds promptly paid to the contractor (i.e., Excel).

#### 1. *JOB RENTALS' STATEMENT OF LIEN WAS FILED POST-PETITION, IN VIOLATION OF THE § 362 AUTOMATIC STAY.*

■ Excel filed for bankruptcy on September 20, 1996. Six days thereafter, on September 26, 1996, Job Rentals filed its Statement of Lien in which it: "claim[ed] and assert[ed] a lien against ... the *funds due and owing Excel Engineering, Inc.*, in the sum of $16,501.21 for equipment furnished the said *public improvement* by Job Rentals and Sales, Inc., plus interest thereon at the legal rate from August 25, 1996, until paid, and $9.00 for filing this Mechanic's Lien" (Job Rentals' Statement of Lien ¶ 8 (emphasis added)).

Kentucky Revised Statute 376.210 is the lien statute applicable to public improvements. It is the lien statute under which Job Rentals claimed and asserted its lien. The Statute provides in pertinent part:

> If the property improved is owned by the State or by any subdivision or agency thereof, or by any county or city, the person furnishing the labor, materials or supplies shall have a lien on *the funds due the contractor* from the owner of the property improved.

K.R.S. 376.210(1) (emphasis added). The plain language of the Statute makes it clear that "the lien attaches only to *funds* actually earned by the contractor" (i.e., Excel). *In re Allgeier & Dyer*, 18 B.R. 82, 84 (Bankr. W.D.Ky.1982) (emphasis added); *McLean County v. Meuth Carpet Supply*, 573 S.W.2d 340, 341 (Ky.1978) This is in contrast with the lien statute governing private improvements, K.R.S. 376.010. A lien filed in connection with a private improvement attaches to the *property* improved. K.R.S. 376.010 and K.R.S. 376.210; *Allgeier & Dyer*, 18 B.R. at 84.

Section 541(a) of the Bankruptcy Code states that a debtor's bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). Subsection 6 of that section provides that all proceeds from property of the estate are likewise property of the estate. § 541(a)(6). Lastly, Subsection 7 of § 541(a) states "any interest in property that the estate acquires after the commencement of the case" shall also be included as property of the estate. § 541(a)(7).

Accordingly then, if the project is a "public project," K.R.S. 376.210 provides that a subcontractor's lien attaches to "the funds due the contractor from the owner of the property improved." Pursuant to § 541(a) of the Bankruptcy Code, "the funds due the contractor" are clearly property of the contractor/debtor's bankruptcy action. *Allgeier & Dyer*, 18 B.R. at 84–86.

It is undisputed that the MSD project at issue, known as the Anna Marie Drive Drainage Project, was in the nature of a public improvement. Thus, pursuant to the provisions of Kentucky's Lien Statute, Job Rentals' lien was asserted under K.R.S. 376.210 and attached to the project funds due Excel, the Contractor. Consequently, Job Rentals' filing of its Statement of Lien six days after Excel filed its Bankruptcy Petition runs afoul of the § 362(a) Automatic Stay provision of the Bankruptcy Code. Section 362(a)(4) states that the filing of a petition in bankruptcy "operates as a stay, applicable to all entities of any act to create, perfect, or enforce any lien against property of the estate." *See also Allgeier & Dyer*, 18 B.R. at 82; *In the Matter of Maas*, 69 B.R. 245, 247 (Bankr.M.D.Fla.1986); *In re Perona Brothers, Inc.*, 186 B.R. 833 (D.N.J.1995); *In re Oxford Royal Mushroom Products, Inc.*, 40 B.R. 930 (Bankr.E.D.Pa.1984). Pursuant to the § 362(a) stay provisions, then, actions taken after the bankruptcy action is commenced to create, perfect or enforce liens violate the automatic stay and are, therefore, invalid.

Section 362(b) does, however, set forth a list of exceptions to the general § 362(a) stay provisions. In this case, Job Rentals asserts that its Statement of Lien falls within the § 362(b)(3) exception. The Court does not agree.

Section 362(b)(3) carves out an exception for:

> any act to *perfect, or to maintain or continue the perfection of, an interest in property* to the extent that the Trustee's rights and powers are subject to such perfection under Section 546(b) of this title or to the extent that such act is accomplished within the period provided under Section 547(e)(2)(A) of this title; (Emphasis added).

Thus, this section applies to actions to perfect, maintain or continue perfection of an interest in property *which the creditor had at the time the bankruptcy was filed. See Maas*, 69 B.R. at 247; *See generally Allgeier & Dyer*, 18 B.R. at 86–88; *Oxford Royal Mushroom Products*, 40 B.R. at 930. A careful review of K.R.S. 376.210(3) reveals that liens of the nature asserted by Job Rentals *are not created* until such time as the Lien Statement is properly filed and served.

K.R.S. 376.210(3) states:

> (3) In all cases where the labor, materials or supplies are furnished for the improvement of any public highway or other public property owned by the state or by any county or city, the statement shall be filed in the county clerk's office of the county in which is located the seat of government of the owner of the property improved, *and the lien shall attach only to any unpaid balance due the contractor for the improvement from the time a copy of the statement, attested by the county clerk, is delivered to the owner or the owner's authorized agent* with whom the contract for improving the public highway or other public property was made. (Emphasis added).

Thus, Job Rentals did not have an interest at the time Excel commenced its bankruptcy action, as it did not file its Statement of Lien until six days post-petition and delivered it to MSD thereafter.

There is no statutory provision which permits Job Rentals' lien to relate-back to an earlier, pre-petition, date. In *Allgeier & Dyer*, the Court correctly concluded "that the enforceability of the Statutory lien depends upon its state of perfection as of the date the petition is filed." 18 B.R. at 87. The *Allgeier & Dyer* case recognized that the "only 'relation-back' provision is that found in K.R.S. 376.210(2) when a statement is filed by one *expecting to furnish* materials, labor or supplies." 18 B.R. at 88 (emphasis added). That provision is inapplicable to the facts of this case, as Job Rentals did not file its Statement of Lien until after it had per-

formed under its equipment lease contract with Excel. Thus, Job Rentals filed its lien pursuant to K.R.S. 376.210(1), which clearly does not have a "relation-back" provision. *Id.*

The case of *In Matter of Perona Brothers, Inc.,* 186 B.R. 833 (D.N.J.1995), is insightful with regard to the facts of this case. The bankruptcy court in that case found that the state, which was the creditor involved, could not *create and perfect* a post-petition lien on the debtor's property because the state's interest in the property did not relate-back to a prepetition date. Therefore, the Court held, any attempt by the State to enforce its post-filing interests violated the automatic stay. *Id.* The Court based that holding on the fact that the lien statute at issue did not have a relation-back provision. *Id.; See also Oxford Royal Mushroom Products,* 40 B.R. at 930 (Court avoided the filing of a post-petition mechanic's lien because the statute in question did not relate the priority back to a pre-petition date); and *Maas,* 69 B.R. at 245 (the post-petition recordation of a claim of lien on debtor's condominium did not fall within any relation-back provisions under Florida's Lien Statute, and therefore, constituted a violation of the automatic stay).

Job Rentals has cited two cases in support of its argument that it is entitled to perfect its lien post-petition: *The Lionel Corp.,* 29 F.3d 88 (2d Cir.1994), and *In re Butler Constr. Co.,* 110 B.R. 281 (Bankr.W.D.Ky. 1989). Neither case is applicable to the facts involved in this case, as neither involved an attempt by a creditor to create a lien post-petition. Rather, both cases involve post-petition attempts by creditors to *perfect* liens that had been created pre-petition, and thus, were already in existence at the time bankruptcy was commenced. Neither case stands for the proposition that a Mechanic's lien can be *created* post-petition.

In summation, because Job Rentals' Statement of Lien was not filed until *after* Excel filed for bankruptcy, the filing constitutes an attempt to *create* a lien post-petition. Thus, Job Rentals' actions clearly violate the § 362(a) automatic stay and its lien is consequently void.

**2. *JOB RENTAL'S ATTEMPTED LIEN WAS NOT PROPERLY PERFECTED UNDER KENTUCKY'S LIEN STATUTE, WHICH CONSEQUENTLY REQUIRES THAT IT BE AUTOMATICALLY RELEASED.***

As discussed above, liens on public improvements are governed by K.R.S. 376.210. Kentucky's statutory scheme for perfecting and maintaining valid liens on public improvements is set out in K.R.S. 376.250, and involves essentially three steps. The Kentucky Court of Appeals has held that there must be *strict compliance* with each of the Statutory requirements; otherwise, a valid, perfected lien does not arise. *Jim Skaggs, Inc. v. Smith,* 799 S.W.2d 585 (Ky. App.1990).

The first step in perfecting a lien in connection with a public improvement requires the subcontractor to file a Statement of Lien that complies with the statutory requirements of K.R.S. 376.210(3), K.R.S. 376.230(1) through (3), K.R.S. 376.240 and K.R.S. 376.250(1). As noted above, Job Rentals executed this first step on September 26, 1996, six days after Excel filed its bankruptcy action, and therefore, the lien is invalid as a result of having been filed in violation of the automatic stay. However, the lien also fails to comply with yet a further step of the statutory scheme required for perfection.

The second step of the process permits the Contractor, Excel, to protest the Statement of Lien. K.R.S. 376.250(2) gives the contractor 30 days from the delivery of an attested copy of the Lien Statement to the public authority, to file its written protest. While K.R.S. 376.250(2) gave Excel 30 days to file such a protest, that period was extended by § 108(b)(2) to 60 days from the Order for Relief. Section 108(b) reads:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law ... fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure,

or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

In this case, the Order for Relief was entered on September 20, 1996. Job Rentals did not file its Statement of Lien until after that date; thus, the 30 day statutory period not only had not expired as of the date the bankruptcy was commenced, it had not even begun to run. Thus, under § 108(b), the applicable time period for Excel to file its protest was 60 days from the Order for Relief, or November 20, 1996. Excel filed its lien protest on November 18, 1996; thus, its protest was timely.

The third step in the public improvement lien process then required Job Rentals, the lien claimant, to institute a lawsuit within 30 days of Excel's protest. K.R.S. 376.250(4). Job Rentals failed to do that. While Job Rentals did file a lawsuit, it failed to do so within the required 30 day period. The 30 day period ran on December 18, 1996. However, Job Rentals did not institute its lawsuit until two days later, on December 20, 1996. K.R.S. 376.250(4) unequivocally mandates:

> (4) If suit is not instituted by the lien claimant for the enforcement of the lien and summons in the suit is not served on the public authority or its chairman within thirty (30) days after the filing by the contractor of the protest, then *the lien shall automatically be released and the funds withheld pursuant to the filing of the lien statement shall be released and promptly paid to the contractor.*

(emphasis added).

The Kentucky Court of Appeals has required strict and absolute compliance with this Statute. *See Skaggs,* 799 S.W.2d at 585. The *Skaggs* case involved a contractor's failure to comply with the time requirements under step two of the process. In that case, the contractor failed to file the written protest within the required 30 day period. Accordingly, the court entered a judgment in favor of the subcontractor, ordering that the money be paid to the subcontractor by the public body out of funds it was holding that were due to the general contractor. *Id.* at 587. The *Skaggs* court held, specifically:

> . . . this is an action brought to enforce a lien pursuant to a statutory scheme. Appellant might have been permitted to raise his points in the trial court *but he failed to pay the price for admission because he omitted to comply with K.R.S. 376.250(2)* which required him to file a written protest within 30 days of the delivery of an attested copy of the lien. In the language of contract law *this step was a "condition precedent" to voicing his objections.*

*Id.* at 587 (emphasis added).

As it applies to this case, *Skaggs* clearly stands for the proposition that Job Rentals' failure to strictly comply with the requirements of K.R.S. 376.250 is fatal to its claim. Job Rentals having failed to timely file its lawsuit, K.R.S. 376.250(4) clearly mandates that the lien shall automatically be released, and the funds released and promptly paid to the contractor, Excel. *Accord Skaggs,* 799 S.W.2d at 587.

Finally, the Court notes that Job Rentals, as a last ditch effort to argue that it complied with the procedural deadlines mandated by Kentucky's Lien Statute, unwittingly sacrifices its claim to the funds by taking the position that the deadlines set forth in K.R.S. 376.250 did not apply with regard to the construction project at issue. K.R.S. 376.240 and K.R.S. 376.250 establish the procedural guidelines for perfecting liens on *funds* due a contractor from a *public authority* in connection with an improvement of "public property *owned by the state, or by any county or city, . . .*" K.R.S. 376.240 and K.R.S. 376.250 (Emphasis added).

These two sections of Kentucky's Lien Statute must be read in conjunction with the preceding section of the same statute, K.R.S. 376.210, which establishes the right to assert such a lien in the first place. K.R.S. 376.210 gives laborers, materialmen and suppliers a lien in connection with the improvement, that attaches to:

> . . . all the property and the franchises of the owner, except property *owned by the*

*state, a subdivision or agency thereof, or by any county or city.*

K.R.S. 376.210(1) (emphasis added). If the property improved is owned by *the state or city*, then K.R.S. 376.210(1) provides that the lien attaches to

... *the funds* due the contractor from the owner of the property improved.

(emphasis added).

Job Rentals argues that "MSD is not an owner within the class of exceptions named for which a lien is limited to funds rather than real estate" (Job Rentals' Response to Excel's Motion for Partial Summary Judgment, at 5). Thus, Job Rentals argues, the procedural deadlines set forth in K.R.S. 376.240 and 376.250 don't apply to this case (*Id.*)

In making this argument, Job Rentals seems to forget the very subject matter of this lawsuit: *the funds.* This dispute is solely and completely over *the funds* held by MSD due the contractor, Excel. The only ground upon which Job Rentals can possibly assert a lien against those funds is through K.R.S. 376.210, as a lien arising from an improvement on property owned by "the state, a subdivision or agency thereof, or by any county or city." K.R.S. 376.210; *Allgeier & Dyer,* 18 B.R. at 84–86. As discussed at great length above, "a *public improvement lien attaches to funds* due and owing to the contractor while a *private improvement lien attaches to the improved property itself* or the owner's interest therein." *Allgeier & Dyer,* 18 B.R. at 84 (Emphasis added). Thus, if the Court accepts Job Rentals' argument, then the case must be dismissed, Job Rentals having shot itself in the foot in its effort to prove compliance with the procedural guidelines. The Court notes that, while there has been some discussion regarding the political characterization of MSD, Kentucky's highest court has classified it as a municipality, as follows:

When the Metropolitan Sewer District was established under the enabling statute, Chapter 76, Kentucky Revised Statutes, it became an independent body politic charged with administration of designated affairs. It was created by the sovereign power of the state as "a public body corporate, and political subdivision". K.R.S. 76.010. The statute constitutes its charter. It exercises delegated powers of government which vitally affect the public health of the entire county. The Constitution in several sections recognizes the existence, present and future, of a municipal corporation other than a county, city, town or taxing district. Sections 157, 158, 159, 161, 164, 165, 180, 181. The Metropolitan District is a separate entity acting for its own purposes and possessing defined, though limited, powers of a municipal community. It meets the conventional descriptions or definitions of a 'municipality.' McQuillin, Municipal Corporations, Section 126, 128; *City of Covington v. District of Highlands,* 113 Ky. 612, 68 S.W. 669; *Gleason v. Weber,* 155 Ky., 431, 159 S.W. 976; *Board of Trustees of Policemen's Pension Fund v. Schupp,* 223 Ky. 269, 3 S.W.2d 606 (1928).

*Rash v. Louisville & Jefferson County Metropolitan Sewer District,* 309 Ky. 442, 217 S.W.2d 232 (1949). Accordingly, the project at issue in this case is clearly a public improvement, and any lien Job Rentals may have asserted in connection therewith would attach to the funds owed Excel, the contractor. Having failed to timely file its lawsuit pursuant to the procedural scheme set forth in K.R.S. 376.250, the lien must be released and the funds paid to Excel.

## II. *JOB RENTALS WILLFULLY VIOLATED THE § 362 AUTOMATIC STAY.*

As a general rule, the § 362 automatic stay enjoins virtually all efforts by a creditor to collect on debts, take possession of collateral, enforce or create a lien, or setoff a debt against the debtor. *See In re Atlantic Business & Community Corp.,* 901 F.2d 325 (3d Cir.1990); *In re Soares,* 107 F.3d 969, 975 (1st Cir.1997); *In re Atkins,* 176 B.R. 998, 1004 (Bankr.D.Minn.1994). The automatic stay is one of the most basic protections provided debtors under the Bankruptcy Code. *Soares,* 107 F.3d at 975; *Small Business Admin. v. Rinehart,* 887 F.2d 165, 168 (8th Cir.1989); *Atkins,* 176 B.R. at 1004. "The stay springs into being immediately upon the filing of a bankruptcy petition:

'[b]ecause' the automatic stay is exactly what the name implies—'automatic'—it operates without the necessity for judicial intervention." *Soares,* 107 F.3d at 975 (quoting *Sunshine Dev., Inc. v. FDIC,* 33 F.3d 106, 113 (1st Cir.1994)).

### A. *JOB RENTALS' VIOLATION OF THE AUTOMATIC STAY.*

A violation of the automatic stay may begin innocently, with the offending creditor unaware of the bankruptcy. Job Rentals asserts that when it filed its Statement of Lien on September 26, 1996, it was ignorant of the fact that Excel had filed for bankruptcy six days earlier, on September 20, 1996. As discussed above, § 362(a)(4) expressly precludes "any act to create, perfect, or enforce any lien against property of the estate." Also, as the Court determined above, Job Rentals' actions with regard to its asserted lien did not fall within any of the exceptions to the automatic stay listed in § 362(b), and constituted a violation of the automatic stay.

Excel listed Job Rentals as a creditor in its Bankruptcy Petition and listed the claim as being disputed. Thus, Job Rentals received notice of Excel's bankruptcy. Consequently, while Job Rentals' initial violation of the stay by filing the Statement of Lien on September 26, 1996, may have been innocent, its continuing efforts to create, perfect and enforce that lien, specifically including the filing of its lawsuit on December 20, 1996 and active litigation with regard to that suit, without filing a motion and obtaining an order terminating or annulling the stay certainly constituted a willful and continuing violation of the stay, warranting the imposition of sanctions. *See Maas,* 69 B.R. at 247 ("the violation by the Association, while it might have been innocent when it recorded the lien in question, its continuing violation of the automatic stay after it refused to expunge the lien from the record was certainly willful, which warrants the imposition of sanctions."); *See also In re Victoria Grain Co.,* 45 B.R. 2, 6 (Bankr. D.Minn.1984).

While Job Rentals did not name Excel as a party to its state court litigation, it most certainly sought by that action to pursue its claim to the funds due and owing Excel, those funds unequivocally being property of Excel's bankruptcy estate. It sought by that action to perfect and enforce the lien it had attempted to create post-petition. The Court has reviewed the Complaint filed by Job Rentals in its state court action, and finds that Job Rentals expressly states that it seeks by that action:

(1) A determination that Job Rentals had acquired and perfected a lien "*against all funds in the hands of MSD now due Excel*" (Job Rentals' State Court Complaint ¶¶ 10 and 12; Wherefore Clause ¶¶ 1 and 2) (Emphasis added); and

(2) "That defendant, MSD, be ordered and directed to pay to Job [Rentals] the amount of its claims and liens, as so determined and adjudged, including principal and costs, out of the funds held by the above-mentioned defendant" (Job Rentals' State Court Complaint, Wherefore Clause ¶ 3).

Accordingly, that state court action unequivocally violated § 362(a)(4)'s stay of "any act to create, perfect, or enforce any lien against property of the estate," and without dispute was initiated and actively pursued by Job Rentals at a time when it had knowledge of the bankruptcy.

### B. *MSD DID NOT VIOLATE THE AUTOMATIC STAY.*

Excel has also moved the Court to hold MSD in contempt for violation of the automatic stay. The Court has carefully considered MSD's actions as they relate to this case and to the fund at issue, and concludes that MSD did not violate the stay. MSD's involvement in the state court proceeding was limited to *contesting* Job Rentals' lien, which in effect protected and advanced Excel's interests, as Excel was the entity with the competing claim to the funds.

### 1. *SANCTIONS FOR JOB RENTALS' WILLFUL VIOLATION OF THE AUTOMATIC STAY.*

Excel has requested that both MSD and Job Rentals be respectively assessed 50% of Excel's attorney fees and costs incurred as a result of this adversary proceed-

ing. The case law provides for the recovery by the debtor of actual damages, including costs and attorney fees, as well as punitive damages for willful violations of the stay. *See In re Bloom,* 875 F.2d 224 (9th Cir.1989); *In re Atlantic Business & Community Corp.,* 901 F.2d 325 (3rd Cir.1990); *In re Barney's Boats of Chicago, Inc.,* 616 F.2d 164 (5th Cir.1980); *In re La Tempa,* 58 B.R. 538 (Bankr.W.D.Va.1986); *In re AM Internat'l, Inc.,* 53 B.R. 744 (Bankr.M.D.Tenn.1985).

Finding that only Job Rentals violated the automatic stay, the Court shall assess 100% of Excel's attorney fees and costs incurred as a result of this adversary proceeding against Job Rentals. The Court finds this sanction to be reasonable, as it is specifically designed to compensate Excel for the attorneys fees and costs expended by Excel as a direct consequence of Job Rentals' violation of stay.

### III. *THE REMAINING CLAIMS.*

Having determined that Excel is the proper party to whom payment of the funds is owed, the Court will sustain Excel's Motion for Partial Summary Judgment. Entry of that Order shall resolve: (1) MSD's Interpleader claim pursuant to which Excel, Job Rentals and Fidelity are named as Defendants; (2) Job Rentals' Counterclaim against MSD, which asserts a claim to the funds at issue; and (3) Fidelity's Counterclaim against MSD, which concerns the proper party to receive payment of the funds.

The Crossclaims running between Excel and Job Rentals set forth a contract dispute, which raises into issue the actual amount owed by Excel to Job Rentals. Those Crossclaims entail issues of material facts, and shall remain unaffected by the Court's ruling. This adversary proceeding shall proceed to trial on those specific Crossclaims, unless the parties are able to settle those matters, which the Court would highly encourage.

Finally, two claims remain: (1) MSD's claim against Fidelity, and (2) Job Rentals' Crossclaim against Fidelity. Those claims do not involve the Debtor, Excel. Rather, they involve only the three non-debtor parties to this action. Additionally, these two claims arise in connection with the Fidelity Guarantee Bond, and do not affect Excel, its bankruptcy estate or its bankruptcy action. These claims involving the bond were asserted in the Jefferson Circuit Court action. The Court finds that the Jefferson Circuit Court is the more appropriate forum for the litigation of these claims. Accordingly, these two claims will be remanded back to state court.

The following four Motions, which are also presently pending, directly relate to those two claims: (1) Fidelity's Motion for Summary Judgment with regard to MSD's Complaint and Job Rental's Crossclaim; (2) Job Rentals' Cross-Motion for Summary Judgment; (3) MSD's Motion for Leave to File its Second Amended Complaint of Interpleader; and (4) Job Rentals' Motion to Amend its Counterclaim against MSD. Accordingly, the Court will refrain from ruling on these matters, and shall instead defer to the state court.

### *CONCLUSION*

For the above stated reasons, the Court by separate Order shall sustain Excel's Motion for Partial Summary Judgment, thereby ordering MSD to pay the funds which are the subject of this interpleader action to Excel. In accordance with that Judgment: (1) Judgment will be entered in favor of Excel on MSD's Interpleader claim; (2) Judgment will be entered on Excel's Counterclaim against MSD; (3) Job Rentals' Counterclaim will be dismissed with prejudice; and (4) Fidelity's Counterclaim will be dismissed with prejudice. Additionally, the following claims and pending motions shall be remanded to the Jefferson Circuit Court: (1) MSD's Claim against Fidelity; (2) Job Rentals' Crossclaim against Fidelity; (3) Fidelity's Motion for Summary Judgment; (4) Job Rentals' Cross-Motion for Summary Judgment; (5) MSD's Motion for Leave to file a Second Amended Complaint of Interpleader; and (6) Job Rentals' Motion to Amend its Counterclaim against MSD. Finally, Job Rentals shall be held in contempt for willfully violating the automatic stay, and shall be assessed 100% of Excel's attorneys fees and costs incurred as a result of this adversary proceeding.