In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1864

Laura Anne Aiello,

Plaintiff-Appellant,

v.

Providian Financial Corp.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2811--David H. Coar, Judge.

Argued November 27, 2000--Decided February 6, 2001

Before Bauer, Posner, and Easterbrook, Circuit Judges.

Posner, Circuit Judge. The "automatic stay" is a statutory injunction against efforts outside of bankruptcy to collect debts from a debtor who is under the protection of the bankruptcy court. 11 U.S.C. sec. 362. "An individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." sec. 362(h). The question presented by this appeal is whether the term "actual damages" is intended to include damages for purely emotional injury. We can find only one federal appellate case that deals with the question, and that only tangentially: Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 269-70 (1st Cir. 1999), cited by neither party to this appeal, held that damages awarded for emotional injury caused by a willful violation of the automatic stay are "actual damages." No doubt they are; but whether their award is authorized by the statute is a separate question, one not addressed in Fleet Mortgage, the defendant apparently having waived it. That case is also distinguishable from our case, as we'll see.

Aiello had filed a petition for Chapter 7 bankruptcy (liquidation). One of her creditors, the defendant, to whom she owed a credit-card debt of about $1,000, asked her to reaffirm the

debt and threatened to charge her with fraud if she refused. She did refuse, and the defendant did not charge her with fraud. She filed this class action suit to obtain redress on behalf of herself and similarly situated victims of the defendant's alleged harassment. We may assume that the defendant violated the stay and that the violation was willful. The bankruptcy court, seconded by the district court, so assumed but nevertheless granted summary judgment for the defendant on the ground that Aiello could not obtain an award of damages under section 362(h) when her only evidence of injury was the statement in her affidavit that upon receipt of the threatening letter from the defendant she "cried, felt nauseous and scared and the letter caused her to quarrel with her husband. . . . Even after her meeting with her attorney, Ms. Aiello was still frightened." Class certification was denied. The appeal challenges that denial as well as the grant of summary judgment for the creditor.

 The Bankruptcy Code authorizes a creditor to ask the debtor to reaffirm the creditor's debt so that it will not be discharged along with the debtor's other debts when the debtor emerges from bankruptcy. 11 U.S.C. sec. 524(c). The request is usually made by a secured creditor, and the inducement to the debtor to accede to the request is that he avoids having his property repossessed, since the order discharging the debtor's debts that usually concludes a bankruptcy proceeding does not extinguish a creditor's security interest. Dewsnup v. Timm, 502 U.S. 410, 417-19 (1992); In re Penrod, 50 F.3d 459, 461 (7th Cir. 1995); In re Be-Mac Transport Co., 83 F.3d 1020, 1025 (8th Cir. 1996). The inducement to the creditor is that he may be undersecured, and in any event it can be costly to foreclose on a security interest. So debt-reaffirmation agreements are to the mutual benefit of debtors and creditors, and so are lawful. But the creditor may not resort to extortion to obtain such an agreement, In re Duke, 79 F.3d 43, 44-45 (7th Cir. 1996); In re Brown, 851 F.2d 81, 84 (3d Cir. 1988); Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n, 804 F.2d 1487, 1491-92 (9th Cir. 1986), and Aiello claims, we must assume correctly given the procedural posture of the case, that the defendant's behavior was extortionate.

 In the absence of a valid reaffirmation agreement, an effort to collect a debt directly from the debtor after the latter has filed for bankruptcy is barred by the automatic stay, an injunction that "issues" without court action upon the filing of the petition for bankruptcy, 11 U.S.C. sec. 362(a), and prevents any creditor

of the debtor from attempting to collect a debt other than by prosecuting a claim within the bankruptcy proceeding itself. See In re Vitreous Steel Products Co., 911 F.2d 1223, 1231 (7th Cir. 1990); Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1203-04 (3d Cir. 1991); Morgan Guaranty Trust Co. v. American Savings & Loan Ass'n, supra, 804 F.2d at 1491-92; Douglas G. Baird, The Elements of Bankruptcy 193-99 (rev. ed. 1993). The right to seek reaffirmation, which is related to the right already mentioned of a secured creditor to enforce his security interest (as distinct from seeking a judgment for the debt itself) outside of bankruptcy, is an exception to the automatic stay. If resort to the exception is vitiated by the extortionate character of the resort, the creditor has violated the automatic stay and thus brought the remedy provision, section 362(h), into play. Among the debt-collection efforts blocked by the automatic stay is foreclosure of the creditor's security interest; although the interest is not extinguished by the discharge in bankruptcy of the debtor's debts, enforcement of it is delayed until then unless the automatic stay is lifted earlier. In re Vitreous Steel Products Co., supra, 911 F.2d at 1231-32; Baird, supra, at 193.

 The automatic stay is primarily for the protection of the unsecured creditors as a group. The stay prevents (without need to ask a court for an injunction) a race by the creditors to seize the debtor's assets, a race that by thwarting the orderly liquidation of those assets would yield the creditors as a group less than if they are restrained. In re Rimsat, Ltd, 98 F.3d 956, 961 (7th Cir. 1996); Martin-Trigona v. Champion Federal Savings & Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989); Maritime Electric Co. v. United Jersey Bank, supra, 959 F.2d at 1204. But it is also for the debtor's protection, id.; In re Hellums, 772 F.2d 379, 381 (7th Cir. 1985) (per curiam); In re Little Creek Development Co., 779 F.2d 1068, 1071 (5th Cir. 1986), most obviously in a case like the present one where the debtor is being asked to waive his right to a discharge of debts, the right that is at the heart of the "fresh start" rationale of bankruptcy. A debtor bludgeoned into waiving his right of discharge is denied the protection of bankruptcy law.

 That protection, however, is financial in character; it is not protection of peace of mind. Bankruptcy is a harrowing experience, for the bankrupt but sometimes for the creditors as well. The Bankruptcy Code was not drafted with reference to the emotional incidents of bankruptcy, and bankruptcy judges are not selected with reference to their likely ability

to evaluate claims of emotional injury. That is not to suggest that victims of tortious infliction of emotional distress in the course of a bankruptcy proceeding are orphans of the law. A creditor who resorts to extortion or intimidation exposes himself to a suit under state tort law. The automatic stay is not an obstacle, because it does not apply to suits by the debtor. Alpern v. Lieb, 11 F.3d 689, 690 (7th Cir. 1993); Martin-Trigona v. Champion Federal Savings & Loan Ass'n, supra, 892 F.2d at 577; Maritime Electric Co. v. United Jersey Bank, supra, 959 F.2d at 1204; Carley Capital Group v. Fireman's Fund Ins. Co., 889 F.2d 1126 (D.C. Cir. 1989) (per curiam).

The office of section 362(h) is not to redress tort violations but to protect the rights conferred by the automatic stay. If one creditor muscled out the others in violation of the stay, the bankruptcy court would impose monetary sanctions under subsection (h). If the defendant here had intimidated the debtor into giving up her right of discharge, the bankruptcy court would have ordered under the authority of the same subsection the monetary relief necessary to restore her to the financial position she would have occupied had the defendant not resorted to intimidation. The interest in judicial economy, as embodied in the "clean-up" doctrine of equity, Wal-Mart Stores, Incorporated Associates' Health & Welfare Plan v. Wells, 213 F.3d 398, 400-01 (7th Cir. 2000); Medtronic, Inc. v. Intermedics, Inc., 725 F.2d 440, 442 (7th Cir. 1984); Mowbray v. Mosely, Hallgarten, Estabrook & Weeden, Inc., 795 F.2d 1111, 1114 (1st Cir. 1986); 1 Dan B. Dobbs, Dobbs on the Law of Remedies: Damages-Equity-Restitution sec. 2.7, pp. 180-81 (2d ed. 1993), might allow the court to "top off" relief designed to redress any financial injury inflicted by the violation of the automatic stay with an award of damages for incidental harms, perhaps including emotional distress if adequately proved, to spare the debtor from having to bring two suits. Fleet Mortgage may have been such a case, since the misconduct of the defendant in violating the automatic stay imposed substantial legal costs on the plaintiff, which are not alleged here. No financial injury is alleged in this case, and we do not think that emotional injury is compensable under section 362(h) when there is no financial loss to hitch it to by means of the clean-up doctrine.

The law has always been wary of claims of emotional distress, because they are so easy to manufacture. For a long time damages for such distress were generally limited to cases in which the plaintiff was able to prove some other injury. See Restatement (Second) of Torts sec. 46 comment b, sec. 436A (1965); W. Page Keeton et

al., Prosser and Keeton on the Law of Torts sec. 54, pp. 361-65 (5th ed. 1984); Archibald H. Throckmorton, "Damages for Fright," 34 Harv. L. Rev. 260 (1921). The courts have grown more confident of their ability to sift and value claims of emotional distress, and the old limitations have largely been abandoned; but suspicion lingers, as illustrated by two recent Supreme Court decisions, Metro-North Commuter Railroad Co. v. Buckley, 521 U.S. 424, 428-38 (1997), and Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994), and by cases, most recently our decision in Alston v. King, 231 F.3d 383, 388-89 (7th Cir. 2000), where we set a high threshold for proof of damages for emotional distress caused by a denial of due process of law. Buckley and Gottshall were both cases under the Federal Employers Liability Act, and the Court emphasized that the Act was passed before the modern era of receptivity to claims of damages for purely emotional injury. The Bankruptcy Code is recent (1978), and section 362(h) is even more recent, having been added to the Code in 1984, but it is a footnote to the power, now more than a century and a half old, to stay creditors' collection efforts in order to preserve the debtor's estate. Ex Parte Christy, 44 U.S. 292 (1845); 3 Collier on Bankruptcy sec. 362.LH[1] (15th rev. ed., Lawrence P. King ed. 2000); see also Mueller v. Nugent, 184 U.S. 1, 14 (1902). There is no indication that Congress meant to change the fundamental character of bankruptcy remedies by enacting the new subsection.

The litigating strategy of the plaintiff's law firm in this case reinforces the common law's traditional concern with the abuses to which a right to obtain damages for emotional distress can give rise. Rather than attempt to prove that Mrs. Aiello suffered more than a transient and trivial shock from the defendant's dunning letter, the firm wants to aggregate her claim with that of all other recipients of such letters from this defendant in order to force settlement by confronting the defendant with an avalanche of litigation and an unquantifiable potential liability. Class actions in bankruptcy are authorized, Fed. R. Bankr. Pro. 7023; In re American Reserve Corp., 840 F.2d 487 (7th Cir. 1988); Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 973, 975 (5th Cir. 2000), but what is contemplated here is a class action in which the only issues of remedy would be the existence, gravity, and monetary value of the emotional distress that the defendant may have inflicted on debtors in bankruptcy by its heavy-handed efforts at obtaining reaffirmations. We are given no reason to suppose that this is what section 362(h) is about.

The potential for abuse if damages for a purely emotional injury can be awarded in suits to redress violations of the automatic stay is considerable, as this case illustrates. The injury suffered by Aiello is by her own account slight, and this is probably true of most of the other members of the class. But since the injuries inflicted by the defendant's allegedly extortionate behavior must vary very considerably across the members of the class, individual hearings would be required to quantify each class member's generally slight damages. Those hearings would cost far more than the stakes of the average class member, which is an indication that this class action suit was brought merely to force a settlement, and is, in short, a nuisance suit. The legal system has all the nuisance suits it needs to keep life interesting.

The plaintiff and her classmates have the normal tort remedies against oppressive debt-collection tactics. See, e.g., Public Finance Corp. v. Davis, 360 N.E.2d 765, 767-68 (Ill. 1976); Sherman v. Field Clinic, 392 N.E.2d 154, 159 (Ill. App. 1979); Moore v. Greene, 431 F.2d 584, 590-93 (9th Cir. 1970); Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d 9, 11 (5th Cir. 1962). And, as we said earlier, if she could show that she had suffered a loss within the contemplation of section 362, which is to say a financial loss, she might be permitted to piggyback a claim for damages for incidental emotional distress. But without such a showing, her claim must fail, and so her suit was rightly dismissed.

Was the denial of class certification also correct? The defendant has not picked up on this court's invitation to appellees in class action suits in which class certification is denied to urge class certification conditional on affirmance of the dismissal of the plaintiff's claim, Amati v. City of Woodstock, 176 F.3d 952, 957 (7th Cir. 1999), but instead has reflexively defended the district court's denial of class certification. And likewise the plaintiff has not conditioned her appeal from the denial of class certification on our reversing the dismissal of the suit, so if we reversed the denial all the other members of the class would go down with her. By exposing the class to such a danger, the plaintiff's law firm undermines its claim to be fit to represent the class. See Greisz v. Household Bank (Illinois), N.A., 176 F.3d 1012 (7th Cir. 1999). In any event, since the case is not suitable for class action treatment because of the variance in injury among the members of the class and the cost of the individualized hearings that would in consequence be required

for assessing damages, class certification was properly denied.

The other questions presented by the appeal are moot in light of our disposition of the main issues.

Affirmed.