**In re Lisa J. BRYANT, Debtor.**

**Nos. 98–14392, 01–14104.**

United States Bankruptcy Court,
S.D. Alabama.

Jan. 28, 2002.

---

William J. Howell, Mobile, Alabama, Attorney for Debtor.

Charles Baer, Mobile, AL, Assistant United States Attorney.

John C. McAleer, Mobile, AL, Chapter 13 Trustee.

## ORDER DENYING THE MOTION OF THE UNITED STATES FOR RELIEF FROM JUDGMENT AND DENYING THE MOTION OF DEBTOR FOR VIOLATION OF THE AUTOMATIC STAY

MARGARET A. MAHONEY, Chief Judge.

This matter is before the Court on the motion of the United States for relief from judgment and the cross-motion of debtor against the United States for violation of the automatic stay. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, this Court is denying the motion of the United States for relief from judgment and denying the cross-motion of debtor for violation of the automatic stay.

FACTS

Lisa J. Bryant filed for chapter 7 bankruptcy on May 26, 1998. A discharge was entered in the chapter 7 case on September 2, 1998.

Lisa J. Bryant filed for chapter 13 bankruptcy relief on December 4, 1998. In that case, Ms. Bryant listed on her schedules a priority debt in the amount of $56,751.12 incurred by Aluminum Fabricators, Inc. and owed to the Internal Revenue Service, Department of Treasury ("IRS"). Bryant was an officer of Aluminum Fabricators, Inc. The IRS was listed on Bryant's mailing matrix at the following addresses

Internal Revenue Service

Department of Treasury

Memphis, TN 37501.

STATE OF ALABAMA

DEPARTMENT OF REVENUE

Legal Division

PO BOX 320001

MONTGOMERY AL 36130

Ms. Bryant's plan proposed to pay the IRS a preference payment of $300 per month for a total of $18,000. After completing the proposed plan, the balance of $38,751.12 still owed to the IRS would be nondischargeable. The IRS did not file a proof of claim. Ms. Bryant completed her chapter 13 plan and received a discharge on August 20, 2001.

Ms. Bryant filed a second chapter 13 bankruptcy case on August 15, 2001. That case is still pending. In the second chapter 13, Ms. Bryant listed a debt to the IRS in the amount of $38,751.12. The IRS filed a proof of claim in the case on September 28, 2001 for a priority tax claim in the amount of $65,650.67. The proof of claim appears to be signed by Vendoria Perodin, Insolvency Manager. The proof of claim gives the following address as the place where notices should be sent:

Internal Revenue Service

801 Tom Martin Drive

Stop R126

Birmingham, AL 35211

The following addresses were listed on the mailing matrix: Internal Revenue Service

63–1136345

Department of the Treasury

801 Tom Martin Drive

Birmingham, AL 35211

Internal Revenue Service

63–1136345

Department of Treasury

Memphis, TN 37501

U.S. Attorney's Office

63–1136345

c/o Bill Sawyer

P.O. Box 4609

Utica, N.Y. 13504–4609

The following letters or notices from or to the IRS discussing Ms. Bryant's case were admitted into evidence at the hearing on this matter:

1. A letter from the IRS dated February 2, 1998, addressed to Aluminum Fabricators Inc. at P.O. Box 632, Bayou La Batre, AL, requested payment of a tax debt in the amount of $25,981.25 which included a penalty of $6,093.01 and interest in the amount of $560.66. (Debtor's Exhibit 20).

2. A notice from the IRS dated March 9, 1998, addressed to Aluminum Fabricators Inc. at the same P.O. Box as above, stated that it was a final and formal notice of the intent of the IRS to levy for the balance due of $27,269.42 which included a penalty of $96.63 and interest of $225.16. The letter was from the Memphis, Tennessee office of the IRS. (Debtor's Exhibit 23).

3. A notice from the IRS dated March 9, 1998 addressed to Aluminum Fabricators Inc. at the same P.O. Box as above requested payment of $63, 684.51. (Debtor's Exhibit 24).

4. A notice from the IRS dated April 13, 1998 addressed to Aluminum Fabricators Inc. at the same P.O. Box as above stated it was a final and formal notice of the intent of the IRS to levy for the balance due of $67,333.42. (Debtor's Exhibit 25).

5. A letter from the IRS dated September 9, 1998 addressed to Lisa Bryant at her personal residence in Coden, Alabama stated that Aluminum Fabricators Inc. owed Federal taxes and that the IRS's efforts to collect those taxes have not been successful, "so we plan to assess a penalty against you." The letter explained that:

> The law provides that individuals who were required to collect, account for, and pay taxes for the business may be personally liable for a penalty if the business doesn't pay the taxes. . . . We plan to charge you an amount equal to the unpaid trust fund taxes which the business still owes the government. This personal liability is called the Trust Fund Recovery Penalty. We will assess and collect the penalty as though it were a tax you owed.

The letter listed Diana Allen as the contact person and gave the following address: 1110 Montlimar Dr., 3rd Floor, Mobile, AL. (Debtor's Exhibit 22).

6. A letter from William L. Howell dated February 17, 1999 addressed to Ms. Diana Allen, a revenue officer with the IRS at 1110 Montlimar Drive, Suite 300, Mobile, Alabama, instructed Ms. Allen to direct all communications to Ms. Bryant's attorney, William L. Howell, due to the chapter 13 proceeding that was filed December 4, 1998. (Debtor's Exhibit 1).

7. A letter from William L. Howell dated March 30, 1999 to Ms. Diana Allen at the Mobile, Alabama address stated that it enclosed a copy of the first page of Ms. Bryant's schedules and a copy of her confirmation order. (Debtor's Exhibit 2).

8. A notice from the IRS dated January 18, 2000 to Mrs. Lisa Bryant at her personal residence in Coden, Alabama stated that the IRS was considering a civil penalty for the tax period of March 31, 1998 and listed Diana Allen as the person to contact. Ms. Allen signed the letter. The letter also states that the IRS may need to contact third parties, including neighbors, employers, employees, and banks to determine the correct tax liability, identify assets, or locate her current address. (Debtor's Exhibit 3).

9. A notice from the IRS similar to the one addressed to Lisa J. Bryant and also dated January 18, 2000, was addressed to Aluminum Fabricators Inc. at P.O. Box 632, Bayou La Batre, Alabama and stated that the IRS was considering 941 taxes for the periods of November 30, 1997, December 31, 1997 and March 31, 1998. That notice was also signed by Diana Allen and listed Ms. Allen as the person to contact. (Debtor's Exhibit 3).

10. A notice from the IRS dated March 12, 2001 was sent to Lisa J. Bryant at her personal residence in Coden, Alabama stated that the IRS "charged you a penalty for not paying employment tax." The notice listed the total amount with penalty and interest owed at $65,650.67 and requested Ms. Bryant to pay the amount or file a claim if she disagreed with the amount owed. The amount of interest listed was .00. The notice also stated that:

> We have been notified that a petition in bankruptcy has been filed by or against you. Our records indicate that there is a balance due on your income tax as shown on this notice. If this period

ended prior to the date of your bankruptcy petition, you should not pay at this time. We may file a proof of claim in the proceeding for this amount.

Payment or inquiry was to be made to the IRS at its Memphis, Tennessee address. The notice states that "if you agree with our figures, please pay the amount shown above by April 2, 2001 ..." (Debtor's Exhibit 4).

11. A letter from William L. Howell dated May 7, 2001 to Ms. Diana Allen informed her that the IRS debt was included in Ms. Bryant's bankruptcy and that since the IRS did not object to the plan and did not file a claim prior to the bar date it was Ms. Bryant's position that no penalty could be assessed. The letter asks that someone with decision making authority contact Ms. Bryant's counsel so that an amicable resolution can be negotiated. (Debtor's Exhibit 5).

12. A letter dated July 19, 2001 to Lisa J. Bryant from Robert L. Williams, Chief, Document Perfection Branch of the IRS in Memphis, Tennessee, stated that the IRS had forwarded her correspondence to its Collection Division and stated that "If further information is needed, they will contact you." (Debtor's Exhibit 6).

13. A letter from Vendoria C. Perodin, Bankruptcy Specialist with the IRS was addressed to William L. Howell, P.A. in Mobile, Alabama. The letter acknowledged consideration of Ms. Bryant's case and stated that since "the confirmed plan specifically provides to pay $300.00 per month toward the liability, with the remaining balance due at the conclusion of the plan to be nondischargeable," the penalty will not be discharged except to the extent the debt is paid through the plan. (Debtor's Exhibit 7).

In addition to the written contacts above, Ms. Bryant testified that she met with Ms. Allen face-to-face before filing her first chapter 13 so that she could obtain the exact amount she owed. The paralegal for Bryant's counsel called and faxed Ms. Allen to confirm the amounts and to notify Allen of the bankruptcy filing. Ms. Bryant received three or four phone calls from the IRS during the pendency of her first chapter 13. Sometimes, the IRS would get Bryant's answering machine and leave a message. When Bryant did answer the telephone, she testified that she would give them her attorney's name and telephone number and ask that they call her attorney. Ms. Bryant testified that she spoke to Ms. Allen on the phone around March 1999. Neither Ms. Allen nor Ms. Bryant were sure about when the other calls were made, but Ms. Allen testified that they were all prior to the actual tax assessment being made against Ms. Bryant personally.

## LAW

The IRS filed a motion for relief from judgment. The IRS seeks to have its claim against Ms. Bryant excepted from the discharge ordered in Ms. Bryant's first chapter 13 case. Ms. Bryant filed a cross-motion against the United States for violation of the automatic stay. Each motion will be discussed below in turn.

**A.**

 Lack of personal jurisdiction over the United States would render a judgment void. *In re Partial Hospital Institute of America*, 281 B.R. 728 (Bankr. S.D.Ala.2001) (citing *United States v. Levoy (In re Levoy)*, 182 B.R. 827, 832 (9th Cir. BAP 1995)). Defective notice may result in a lack of jurisdiction over a party. *Id.* Fed. R. Bankr.P. 9014 mandates that in a contested matter the motion must be served "in the manner provided for service of a summons and complaint by Rule 7004." This Court stated in Partial Hospital that the requirements of Rule 7004

"ensure that the Department of Justice, which has been charged with supervision of all litigation in which the Government is a party, may properly supervise such litigation and only in those instances where it consents to be sued." *In re F.C.M. Corp.,* 1987 WL 364456, *3 (S.D.Fla.1987). Fed. R. Bankr.P. 7004 requires that service upon the United States be made:

by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney ... and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States.

Ms. Bryant clearly did not follow the requirements of Fed. R. Bankr.P. 7004 in her first chapter 13 case. The mailing matrix does not list the Attorney General or the United States Attorney. However, Bryant contends that confirmation was not a contested matter. Bryant listed her debt to the IRS, provided in her plan for a preference payment to the IRS and provided that the remaining balance would not be discharged by the bankruptcy. The person the IRS provided as a contact person, Ms. Allen, had provided the amount owed and was aware of the bankruptcy and the terms of her plan. Bryant was not aware of any disagreement as to the amount owed and the IRS did not file an objection. The issue is whether the United States received notice of Bryant's bankruptcy case so that it could object. The initial bankruptcy filing notice is not a contested matter and Fed. R. Bankr.P. 7004 does not apply. Fed. R. Bankr.P. *2002* provides that notice be sent of the time fixed for filing objections and the hearing to consider confirmation of a chapter 13 plan. In uncontested matters 11 U.S.C. § 342 requires only that "[t]here

shall be given such notice as is appropriate."

Normally sending notice only to a servicing center of the United States would not be sufficient. However Bryant argues that even if service was technically inadequate, the notice was sufficient to provide the United States with due process of law. Some courts have held that even actual knowledge is not sufficient to waive sovereign immunity and obtain jurisdiction of the United States. See *F.C.M. Corp.,* 1987 WL 364456 at *3; see also, *Campbell v. Castelo (In re Campbell),* 105 B.R. 19, 20 (9th Cir. BAP 1989) (pre-revision to 11 U.S.C. § 106 in 1994). However, when the issue is whether a debt should be discharged where the creditor failed to file a proof of claim, section 523(a)(3) of the Bankruptcy Code provides that the debt will be discharged if the creditor had "notice or actual knowledge of the case" in time to timely file a proof of claim. See *GAC Enterprises, Inc. v. Medaglia (In re Medaglia),* 52 F.3d 451 (2d Cir.1995). In this case the issue clearly involves whether the debt was discharged where the creditor failed to file a proof of claim. Therefore, even if the IRS did not receive proper notice, "actual knowledge" would be sufficient.

Bryant's first chapter 13 was filed on December 4, 1998 and she received a discharge in that case on August 20, 2001. Ms. Allen was sent letters concerning Bryant's bankruptcy filing beginning on February 17, 1999. That letter instructed Allen to direct all communications to Bryant's attorney due to the bankruptcy filing. Subsequent letters to Ms. Allen contained more information about Bryant's bankruptcy. Ms. Bryant also spoke to Ms. Allen on the telephone and asked that Allen talk to her attorney. The paralegal for Bryant's counsel called Ms. Allen to confirm the amounts and faxed to Ms.

Allen notice of the bankruptcy filing. Ms. Allen and other IRS employees sent notices or letters to Ms. Bryant concerning Bryant's bankruptcy. A letter to Ms. Bryant from Vendoria C. Perodin, Bankruptcy Specialist, specifically lists the treatment given to the claim of the IRS in Bryant's plan. There was testimony that none of the people who had knowledge of Bryant's case had authority to bind the IRS. The testimony was that the persons with knowledge were only in the collection department of the IRS. However, Ms. Perodin is the same person who signed the proof of claim for the IRS in Bryant's current chapter 13. This Court finds that due to the volume of contacts back and forth between Bryant and Bryant's counsel and employees of the United States, that the United States had adequate notice of Bryant's bankruptcy filing. Therefore, since the IRS did not file a proof of claim or contest confirmation, the IRS is bound by the terms of Ms. Bryant's plan and only $38,751.12 remained to be paid to the IRS after her discharge in her first bankruptcy case.

This Court ruled in *In re Ochab,* 271 B.R. 673 (Bankr.S.D.Ala.1999) that when a debtor files a motion to amend his plan, the motion is a contested matter and notice must be given to the U.S. Government in accord with Fed. R. Bankr.P. 7004. In the present case, the notice given of the plan confirmation date and proof of claim filing deadline are not contested matters in contrast to the motion required for an amended plan.

B.

■ As to Bryant's motion for violation of the automatic stay, the IRS claims that the telephone calls and notices it sent to Ms. Bryant concerned only the corporate debt owed by Aluminum Fabricators (of which Ms. Bryant was an officer) or were only used to determine the amount of personal liability and not to collect a debt. However, upon examining the letters and notices, it appears that several of the letters did concern the IRS's personal claim against Ms. Bryant. The first four letters and letter (9) listed above were addressed to Aluminum Fabricators. They are therefore not violative of Ms. Bryant's stay because they did not seek to collect from her; they sought to collect from Aluminum Fabricators. The letters numbered (5), (8), and (10) were sent to Bryant at her personal residence and therefore could violate the stay. Letter number (13) was sent to her attorney and merely discusses her plan. The letter did not violate the stay. See *U.S. Through Farmers Home Admin. v. Nelson,* 969 F.2d 626 (8th Cir. 1992) (letter was sent to counsel "who presumably would be in a position to know or learn of his clients' rights under the bankruptcy law and would not be intimidated"). The Court will address the letters numbered (5), (8) and (10) below.

■ Notice number (5) is dated September 9, 1998 which is after Bryant's chapter 7 discharge and before her first chapter 13 filing when no stay was in effect. Notice number (8) states that it is for "information only—no response is necessary." The notice does not state an amount or ask for payment. It lists the type of tax and the period for which the IRS will be determining liability. Since it is not a collection letter and seeks nothing from Ms. Bryant, it does not violate the stay. Letter number (10) addressed to Ms. Bryant clearly requests that she pay the amount owed but, under 11 U.S.C. § 362(b)(9), if it is an "issuance of a notice and demand for payment" of a tax assessment then it does not violate the automatic stay. Section 362(b)(9) specifically excepts the following from violating the stay:

(A) an audit by a governmental unit to determine tax liability;

(B) the issuance to the debtor by a governmental unit of a notice of tax deficiency;

(C) a demand for tax returns; or

(D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

The IRS is still prohibited from taking steps to collect the tax. However, it is allowed "to make an assessment and send the first bill notifying the taxpayers of the liability." *In re Innovation Instruments, Inc.*, 228 B.R. 313 (Bankr.N.D.Fla.1998) (quoting 140 Cong. Rec. S4640, 4649 (daily ed. April 21, 1994) (statement of Sen. Metzenbaum)). The notice indicates that .00 interest was due on the tax liability. The IRS is entitled to interest on a deficiency in tax for the period that the tax was due and unpaid. 26 U.S.C. § 6601(a). Since there was no interest added to the liability, it appears that the notice is the initial notice and demand. The earlier notices to Aluminum Fabricators show where interest was added to each bill. Letter (10) must be the first bill notifying Ms. Bryant of the assessment and is not barred by the automatic stay.

 As to the telephone contacts they were primarily, if not all, made by Ms. Allen. As discussed above, Ms. Allen clearly had knowledge of Bryant's bankruptcy filing and had been instructed to direct all communications to Ms. Bryant's attorney. However, the testimony was that Ms. Bryant never talked to Ms. Allen other than to tell Allen to call her attorney and it would appear that the calls were to obtain information to determine the tax liability. Ms. Allen testified that all the calls were made prior to the tax assessment.

The Court concludes that any violation of the stay by the IRS was de minimis. The contacts were intentional but they were all either excepted from the stay or, if violations, were not serious. The calls and letters were informational, not threatening. The Court realizes Ms. Bryant testified that the contacts upset her. In fact, she stated that these contacts made her nervous and "totally upset." She cried thirty minutes to an hour each time she got one of the contacts. She tried to hide it from her children. The phone calls and letters affected her ability to eat and sleep. The contacts caused her to have stomach problems and exacerbated an acid reflux problem. She testified that she was already "at her wits end" from filing the bankruptcy and that the contacts made it worse. However, courts are wary of claims of emotional distress, and set a high threshold for proof of damages. *Aiello v. Providian Financial Corp.*, 239 F.3d 876, 880 (7th Cir.2001). Recent cases have been particularly critical of damage awards when the only injuries were emotional. Section 362(h) provides for the recovery of "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The majority of courts hold that claims for emotional distress under § 362(h) should be denied "where there is no medical or other hard evidence to show something more than a fleeting or inconsequential injury." *In re Taylor*, 263 B.R. 139 (N.D.Ala.2001) (citations omitted). This Court finds the complaints of Ms. Bryant are similar to the complaints of the plaintiff in the *Taylor* case. The plaintiff in that case complained of:

great anguish and emotional distress. She suffered with headaches, loss of

sleep and lack of concentration. She withdrew and often cried. Her performance as a high school math teacher suffered. She did not receive any medical treatment for these conditions.

*Taylor,* 263 B.R. at 146. The *Taylor* court found that no basis existed to award the plaintiff damages for emotional distress. *Id.* at 152. The court, quoting *In re Aiello,* 231 B.R. 684, 691 (Bankr.N.D.Ill.1999), stated:

> There must be some medical or other corroborating evidence to support the debtor's claim which shows that the debtor suffered something more than just fleeting and inconsequential distress, embarrassment, humiliation and annoyance. However, if the creditor's conduct is so egregious and extreme that one would normally expect emotional distress to occur, then the court may allow such damages without requiring additional evidence if it finds the debtor's testimony to be credible.

*Id.* Likewise, the plaintiff in the *Aiello* case had similar emotional complaints and the Seventh Circuit found that the plaintiff's injury did not warrant the award of damages. In *Aiello* the plaintiff "cried, felt nauseous and scared and the letter caused her to quarrel with her husband.... Even after her meeting with her attorney, Ms. Aiello was still frightened." *Aiello,* 239 F.3d at 878. Like the plaintiffs in *Taylor* and *Aiello,* Bryant's injuries are purely emotional. Bryant did not suffer any financial damages. She received no additional medical attention for the problems allegedly caused or exacerbated by the contacts of the United States. This Court does not find that the conduct of the United States was so egregious and extreme that one would normally expect emotional distress to occur. The calls and letters were informational, not threatening and the resulting injury to Ms. Bryant is too slight to warrant the award of damages for purely emotional distress. Therefore the award of actual damages and attorneys' fees and costs is zero.

This Court has two other published cases in which debtors were awarded damages for violations of the stay by the IRS. *Matthews v. U.S. (In re Matthews),* 184 B.R. 594 (Bankr.S.D.Ala.1995); *Davis v. U.S. (In re Davis),* 201 B.R. 835 (Bankr. S.D.Ala.1996). In both cases the IRS actually seized funds of the debtors. This action clearly warranted damages, including emotional distress damages based on the facts of the cases. Ms. Bryant's case is very different from the situation of the Matthews and Davises.

THEREFORE IT IS ORDERED:

1. The motion of the United States for relief from judgment is DENIED and the IRS was owed, as of the debtor's discharge in Case No. 98–14392, $38,751.12 as an unsecured priority debt.

2. The cross motion of debtor against the United States for violation of the automatic stay is DENIED.