In re Antonio RIVERA TORRES and Sofia Villata Sella, Debtors.

United States, Appellant/Cross–Appellee,

v.

Antonio Rivera Torres and Sofia Villata Sella, Appellees/Cross–Appellants.

BAP Nos. PR 03–036, PR 03–037, PR 03–069. Bankruptcy No. 92–05406–GAC.

United States Bankruptcy Appellate Panel of the First Circuit.

May 21, 2004.

H.S. Garcia, United States Attorney, Rebecca Vargas Vera, Assistant U.S. At-

torney, Beatriz T. Saiz, Trial Attorney, on brief for the Appellant.

Irving K. Henandez Valls, on brief for the Appellee.

Before FEENEY, ROSENTHAL, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

KORNREICH, Bankruptcy Judge.

The United States of America (the "Internal Revenue Service" or "IRS") appeals orders of the United States Bankruptcy Court for the District of Puerto Rico awarding damages to Antonio Rivera Torres and Sofia Villata Sella (referred to jointly as "Debtors" and individually as "Antonio" and "Sofia") for the IRS's violations of the discharge injunction provisions of 11 U.S.C. § 524.[1] The Debtors cross-appeal from the Bankruptcy Court's decision not to award the Debtors their attorneys' fees. We affirm the judgment and damages against the IRS, and reverse and remand the denial of attorneys' fees and costs.

## BACKGROUND

The Debtors filed a joint Chapter 7 case on September 1, 1992. The IRS filed a proof of claim in the amount of $21,587.11, consisting of an unsecured claim of $14,486.62 for 1985 self-employment income taxes, and a priority claim of $7,100.49 for self-employment income taxes for 1989 through 1992. The Debtors received a discharge of their liabilities, including their 1985 federal taxes, in January of 1993. The IRS suspended its collection activities on the 1985 liabilities until it began sending notices to the Debtors in 1996. The Debtors responded to these notices in a series of telephone calls with IRS agents. By notice dated September

2, 1996, the Debtors were informed that a refund of $1,225 due them for tax year 1995 had been applied to the 1985 liabilities which had been discharged. That notice showed a balance due for 1985 of $16,209 after the application of the 1995 refund. The IRS also sent the Debtors a final notice of levy dated November 30, 1996.

On March 18, 1997, the Debtors filed a motion in the Chapter 7 case seeking an order that the IRS show cause why it should not be held in contempt for violating the discharge injunction. In their motion, they also requested actual damages, punitive damages, attorneys' fees and costs. As a direct consequence of the Debtors' motion, the application of the 1995 refund to the 1985 tax liabilities was reversed; however, the $1,225 was retained by the IRS and reapplied to liabilities which had not been discharged. The IRS filed a response to the motion which was followed by a reply of the Debtors. Thereafter, the parties filed cross motions for summary judgment. Other than the nature and extent of damages, the essential facts were not in dispute. The Debtors argued that the IRS did not have sovereign immunity by virtue of § 106, and that they were entitled to monetary damages, including compensation for emotional distress and attorneys' fees. With regard to attorneys' fees, the Debtors maintained that nothing in the Internal Revenue Code prohibited the award of such fees, and, alternatively, if there was a requirement to exhaust their administrative remedies, that they had done so. The IRS agreed that it had violated the discharge injunction, but argued that § 524 did not authorize an award of damages. At the summary judgment hearing, the IRS changed its position, agreeing that it was liable for com-

1. Specific provisions of the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101 *et seq.*, will here-inafter be referred to simply by their section number.

pensatory damages, but not attorneys' fees, emotional distress damages, or punitive damages.

By interim order entered October 17, 2001, the Bankruptcy Court denied the request of the IRS for summary judgment and awarded partial summary judgment to the Debtors, subject to an evidentiary hearing on damages, the IRS having conceded to a willful violation of the discharge injunction. The Bankruptcy Court's decision was premised upon the abrogation of sovereign immunity contained in § 106(a) with respect to §§ 105 and 524 and the power of the Bankruptcy Court to award monetary relief against the IRS that is necessary or appropriate, excluding punitive damages, for a violation of the discharge injunction. The Bankruptcy Court also applied 28 U.S.C. § 2412(d)(2)(A) and 26 U.S.C. § 7430 to the Debtors' request for attorneys' fees and litigation costs and denied that request because the Debtors had failed to first seek fees and costs in administrative proceedings before the IRS.

The evidentiary hearing on damages took place on January 22, 2003. Antonio testified that he had made four or five trips from his new home in Florida to Puerto Rico to try to resolve the problem with the IRS. He also said that he had experienced an upset stomach, nervousness and stress, and that the situation had adversely affected his marriage.

Sofia did not testify at the hearing, but her deposition transcript was admitted into evidence by agreement of the parties and is included in the record on appeal. It shows that Sofia had made telephone calls to the IRS each time she and her husband had received a collection letter. She testified that the threat to garnish her husband's wages and the request of the IRS that they describe all of their belongings had caused her to feel worry and panic. The collection activity also had caused

marital problems and times when the couple had not spoken to each other for days. Sophia also said that she had suffered anxiety and stress-related neck pains, muscle spasms, and sleep problems and that she had taken medication to help her sleep. There is no evidence that either Debtor had consulted a doctor and no corroborating medical evidence was offered.

The Bankruptcy Court made findings of fact with respect to Antonio on March 31, 2003, and awarded him $4,000 for expenses and $5,000 for emotional damages. By separate order entered on July 16, 2003, the Bankruptcy Court determined Sofia had suffered equally and awarded her $5,000 for emotional distress. Timely notices of appeal were filed.

The IRS appeals both the summary judgment order and the separate orders awarding damages to Antonio and Sofia, but only to the extent of the emotional distress awards. Its primary arguments are that: 1) emotional distress damages may not be awarded for civil contempt; 2) the abrogation of sovereign immunity in § 106 does not extend to emotional distress damages; and 3) the Bankruptcy Court abused its discretion in awarding emotional distress damages. The Debtors cross-appeal from the ruling that they are not entitled to attorneys' fees and costs.

## STANDARD OF REVIEW

This Panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1). See Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. at 646. The partial summary judgment order was not final when it was entered, but became final when the Bankruptcy Court,

in its subsequent orders, awarded damages to Antonio and Sofia. The parties, by their conduct and statements, agree that the Debtors' motion seeking damages for the IRS's violation of the discharge injunction is a core matter, and that the Bankruptcy Court's orders awarding damages were final. We review conclusions of law *de novo*, and findings of fact under the clearly erroneous standard. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994).

## DISCUSSION

### 1. *Emotional distress damages.*

A bankruptcy discharge operates as an injunction against certain post-discharge efforts to collect debts which have been discharged. A discharge order conforming to § 524 was entered in this case, stating, among other things, that, "All creditors whose debts are discharged by this order ... are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the above named debtor." The IRS admits that its conduct was a violation of the discharge order and the provisions of § 524(a)(2) [2] and does not contest the expense award. Its appeal is limited to the emotional distress damages awards.

Section 524 does not contain a specific remedies provision. In this respect, it differs from § 362 which imposes an automatic stay of collection activity upon the filing of a case. Paragraph (h) of § 362 provides that, "An individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate

circumstances, may recover punitive damages." But the absence of a similar provision in § 524 does not mean that a violation of the discharge injunction will go unpunished. Section 105, which was invoked by the Bankruptcy Court in this case, allows a bankruptcy court to issue any order that is necessary or appropriate to carry out the provisions of the Code.

The Bankruptcy Court relied upon § 105(a) as authority for awarding damages for civil contempt arising out of the violation of the discharge injunction. That paragraph states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The extent of the statutory contempt powers given to a bankruptcy court was discussed by the First Circuit in *Bessette v. Avco Fin. Serv., Inc.*, 230 F.3d 439 (1st Cir.2000), *cert. denied*, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001), a civil action which had been commenced in the district court for violation of the § 524 discharge injunction. The Court began its analysis by sidestepping the question of whether a violation of § 524 gives rise to a private cause of action, choosing instead to base its reversal of the district court's dismissal of a civil contempt action pursuant to the contempt powers given to a court sitting in bankruptcy. "Section

---

**2.** A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt

as a personal liability of the debtor, whether or not discharge of such debt is waived ..." 11 U.S.C. § 524(a)(2).

105(a) empowers the bankruptcy court to exercise its equitable powers—where necessary or appropriate—to facilitate the implementation of other Bankruptcy Code provisions." *Id.* at 444 (internal quotations and citations omitted). "Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code...." *Id.* at 444–45 (internal quotations and citations omitted). These powers are "in addition to whatever inherent contempt powers the court may have" and "must include the award of monetary and other forms of relief 'to the extent such awards are necessary and appropriate to carry out the provisions of the Bankruptcy Code' and provide 'full remedial relief.'" *Id.* at 445 (internal quotations and citations omitted). Therefore, the Court held that § 524 is enforceable through § 105. *Id.*

 The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders. *See International Union, UMWA v. Bagwell,* 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("The traditional justification for the relative breadth of the contempt power has been necessity...."). *See also Goya Foods, Inc. v. Wallack Mgmt. Co.,* 290 F.3d 63, 78 (1st Cir.), *cert. denied,* 537 U.S. 974, 123 S.Ct. 434, 154 L.Ed.2d 330 (2002).

> Federal courts are empowered to issue civil contempt sanctions to "protect[ ] the due and orderly administration of justice and ... maintain[ ] the authority and dignity of the court." In a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, is within the universe of permissible sanctions.

*Id.* (internal quotations and citations omitted). A court has broad discretion in its choice of civil contempt sanctions and both the choice of sanction and the amount of the award are reviewed under the abuse of discretion standard. *Id.* The amount of the sanction need only "be established by competent evidence, and must bear a reasonable relationship to the actual losses sustained by the injured party." *Id.*

There is no express inclusion or exclusion of emotional damages in *Bessette;* nonetheless, we are satisfied that the sweep given § 105(a) by the First Circuit in that case is broad enough to include such damages within the ambit of actual damages for a violation of § 524, "if the merits so require." *Bessette,* 230 F.3d at 445.

> Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524." *See, e.g., In re Hardy,* 97 F.3d [1384] at 1389–90 [(11th Cir. 1996)]; *In re Elias,* 98 B.R. at 337; *Cherry,* 247 B.R. at 191; *In re Arnold,* 206 B.R. 560, 568 (Bankr.N.D.Ala.1997); *Wiley v. Mason (In re Wiley),* 224 B.R. 58, 66 (Bankr.N.D.Ill.1998) (denying motion to dismiss), *vacated on other grounds,* 237 B.R. 677 (Bankr.N.D.Ill. 1999) (finding class representative inadequate because she suffered no injury); *Matthews,* 184 B.R. at 599–601; *In re Bowling,* 116 B.R. 659, 664–65 (Bankr. S.D.Ind.1990); *cf. In re Rosteck,* 899 F.2d 694, 697 (7th Cir.1990) (affirming sanction for violation of § 524 without reference to § 105 contempt powers).

*Id.*

 Of the cases cited by *Bessette* as authority for the broad sweep of § 105(a),

one, *Matthews v. United States (In re Matthews)*, 184 B.R. 594 (Bankr.S.D.Ala. 1995), allowed an award of emotional distress damages against the IRS. *Matthews*, 184 B.R. at 601. This reference strongly suggests an acknowledgment by the First Circuit that full remedial relief for civil contempt must include emotional damages when the merits so require.

There are contrary views on the propriety of an award of emotional damages for civil contempt. *See, e.g., Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir.1989) ("[N]o authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none"); *see also McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir.1992) ("The problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort case, and should not be imported into civil contempt proceedings"), *cert. denied*, 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992). In this Panel's view, these opinions are not convincing. The conclusion of the Fourth Circuit in *Walters* was reached without critical analysis. In *McBride*, the discussion of emotional distress damages was unrelated to the outcome of the case. The Eighth Circuit overturned a contempt sanction against the United States solely on the basis of sovereign immunity.

■ Often, as in the case before us, a debtor's out-of-pocket expenses and other economic losses will be relatively insignificant with respect to a violation of the discharge injunction. In such instances redress for sustained emotional injury would be a major factor in fashioning an award of full remedial relief. Concerns about the potential for abuse are unwarranted. Like other aspects of an award for civil contempt, monetary damages for emotional injury would be appropriate only if the nature and extent of the injury and its reasonable relationship to the violation of the discharge injunction are established by competent evidence. *See Goya*, 290 F.3d at 78. Such a showing may or may not require corroborating medical evidence. *See Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 724 (1st Cir.1994).

To support its award of emotional damages, the Bankruptcy Court relied upon *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265 (1st Cir.1999), a decision that included emotional distress damages within the meaning of the phrase "actual damages" under § 362(h). *Kaneb*, 196 F.3d at 269. The Bankruptcy Court's reliance upon *Kaneb* is understandable considering the many similarities between the automatic stay and the discharge injunction. Each is based upon a Code provision and a court order and, to some extent, each exists to protect an individual debtor from specific kinds of collection activity. Significantly, a violation of either provision may be compensated with monetary relief.

■ Our decision to sustain the Bankruptcy Court rests firmly upon the statutory and inherent powers of a bankruptcy judge to ameliorate civil contempt with full remedial relief. *Bessette*, 230 F.3d at 445.[3]

---

**3.** For an interesting argument that § 524 gives rise to a right of action to remedy violations of the discharge injunction, *see* Robert P. Wasson, Jr., *Remedying Violations of the Discharge Injunction under Bankruptcy Code § 524, Federal Non–Bankruptcy Law, and State Law Comports with Congressional Intent, Federalism, and Supreme Court Jurisprudence for Identifying the Existence of an Implied Right of Action*, 20 BANKR.DEV. J. 77, 137 (2003). Because the First Circuit has determined that damages are available for such violations under a court's contempt powers, *Bessette*, 230 F.3d at 445, our interest in whether a private right of action exists under § 524 remains academic.

Although *Kaneb* interprets § 362(h), the decision is persuasive authority because it contains a clear acknowledgment that emotional damages may be awarded by a bankruptcy judge for a violation of a Code provision: "An honest accounting of actual damages under § 362(h) *must include* ... psychological suffering...." *Kaneb,* 196 F.3d at 270 (emphasis added).

Other courts have awarded emotional damages for violations of the automatic stay or the discharge injunction. *See, e.g., In re Perviz,* 302 B.R. 357 (Bankr. N.D.Ohio 2003) (awarding $2,000 for emotional damages for willful violation of discharge injunction); *In re Bishop,* 296 B.R. 890 (Bankr.S.D.Ga.2003) (awarding $5,000 for emotional damages for willful violation of automatic stay); *Holden v. IRS (In re Holden),* 226 B.R. 809, 812 (Bankr.D.Vt. 1998) (debtor may recover emotional distress damages for IRS's willful violation of automatic stay).[4]

The Seventh Circuit has taken issue with the First Circuit's decision that damages for emotional injury are actual damages under § 362(h). The gist of *Aiello v. Providian Fin. Corp.,* 239 F.3d 876 (7th Cir.2001), is that in enacting § 362(h) in 1984, Congress did not alter the "fundamental character of bankruptcy remedies" which never included emotional distress damages. *Aiello,* 239 F.3d at 881. According to the Seventh Circuit, the automatic stay exists "primarily for the protection of the unsecured creditors as a group," *id.* at 879; its protection is financial in character and not protection of peace of mind, *id.*; victims of tortious infliction of emotional distress at the hands of creditors in a bankruptcy proceeding may obtain relief under state law, *id.* at 880; and "[t]he law has always been wary of claims of emotional distress, because they are easy to manufacture." *Id.*

Despite the contrary suggestion in *Aiello,* 239 F.3d at 879–80 ("[B]ankruptcy judges are not selected with reference to their likely ability to evaluate claims of emotional injury"), bankruptcy judges in the First Circuit are empowered to award emotional damages for a violation of § 362(h). *Kaneb,* 196 F.3d at 269. They also have the power to choose a sanction and award monetary relief for civil contempt that is "consistent with the Code and does not alter the Code's distribution of other substantive rights," *Bessette,* 230 F.3d at 445 (*citing Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hospital Soc'y, Inc.),* 124 F.3d 22, 28 (1st Cir.1997); *Official, Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.),* 984 F.2d 1305, 1311 (1st Cir.1993)), including, when the merits so require, compensation for emotional distress attributable to a violation of the discharge injunction.

In this instance the evidence before the Bankruptcy Court demonstrated a reasonable relationship between the violation of the discharge injunction and the emotional injuries sustained by the Debtors. Further, there is no evidence suggesting that the award of emotional damages was inconsistent with the Code or that it altered the Code's distribution of other substantive rights. Therefore, we conclude that the award of emotional damages was not an abuse of discretion.

2. *Sovereign immunity.*

The IRS has not challenged the abrogation of sovereign immunity under § 106(a) with respect to §§ 105 and 524; nor has it disputed that a bankruptcy court

---

4. In *Holden,* the court indicated that corroborating medical testimony would be needed to show emotional damages. 226 B.R. at 809.

The IRS concedes that in the First Circuit, corroboration is not a prerequisite to the award of damages for emotional distress.

may award money damages for a violation of the discharge injunction. Instead, the IRS contends that § 106(a) imposes certain limitations upon a bankruptcy court's power to award damages with respect to governmental units and that those limitations include a ban on emotional damages. Specifically, the IRS asserts that § 106(a)(4), which incorporates applicable non-bankruptcy law into the enforcement of any order, process or judgment against a governmental unit, prohibits the award of emotional damages in this case.[5] With respect to the IRS, applicable non-bankruptcy law would include § 7433 of the Internal Revenue Code and treasury regulation 26 C.F.R. § 301.7433–1.

This argument was not raised in the Bankruptcy Court and for that reason we will not consider it on appeal. *See Amcel Corp. v. International Executive Sales, Inc.*, 170 F.3d 32, 35 (1st Cir.1999). However, it is worth mentioning that 26 C.F.R. § 301.7433–1, upon which the IRS relies, did not become effective until July 22, 1998, roughly two years after the events in this case. At oral argument the IRS acknowledged that the applicable non-bankruptcy law in effect at the time did not prohibit an award of emotional damages.

3. *The damages award.*

■ As noted above, a civil contempt sanction is reviewed for abuse of discretion. *Goya*, 290 F.3d at 78. This is a highly deferential standard. *See Conservation Law Found. v. Federal Highway Admin.*, 24 F.3d 1465, 1471 (1st Cir.1994). The Bankruptcy Court conducted a full evidentiary hearing at which the IRS participated, and awarded emotional distress damages based upon Antonio's testimony

and Sofia's deposition. Antonio testified that the communications from the IRS made him nervous and unable to concentrate, caused him an upset stomach, and caused him and his wife to argue about their debt to the IRS, and his wife would get so upset that they would not talk for days. Sofia testified in her deposition that the stress caused by the IRS's communications manifested itself in neck pain, lack of sleep, and muscle spasms. There was substantial evidence that the IRS's conduct caused emotional distress to both of the Debtors. We find no abuse of discretion in the Bankruptcy Court's award of emotional distress damages as a contempt sanction for the IRS's intentional violations of the discharge injunction. Moreover, the findings of fact by the bankruptcy judge were not clearly erroneous because they were based upon unrebutted evidence.

4. *The Debtors' costs and attorneys' fees.*

■ The Bankruptcy Court determined that the appropriate non-bankruptcy laws governing an award of attorneys' fees and costs in this case would be 28 U.S.C. § 2412(d)(2)(A), a provision of the Equal Access to Justice Act ("EAJA"), and 26 U.S.C. § 7430, a section of the Internal Revenue Code. Except as otherwise prohibited by statute, § 2412(d)(2)(A) of the EAJA requires the award of legal fees and costs to a party prevailing against a governmental unit of the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(2)(A). In this instance there were no specific findings with respect to whether the position of the IRS was substantially justified; nor

---

5. Section 106(a)(4) provides:

The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such gov-

ernmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

were there findings concerning special circumstances that would have made an award of fees and costs unjust. The denial of an award of fees and costs was apparently made solely on the basis of the statutory exception to § 2412(d)(2)(A) of the EAJA, found in § 7430 of the Internal Revenue Code, which requires the exhaustion of administrative remedies before such an award may be made. 26 U.S.C. § 7430(b)(1).

Section 7430 does not define administrative remedies, so the Bankruptcy Court relied upon the requirements found in the treasury regulations, including, (a) the submission of a written claim to the district director of the IRS, and (b) the written denial of the claim by the district director. 26 C.F.R. § 301.7430–1(d)(i)and (ii). Because no written claim had been submitted to the district director by the Debtors, the Bankruptcy Court concluded that they had failed to exhaust their administrative remedies and their claim for fees and costs was denied.

By its own terms, the regulation relied upon by the Bankruptcy Court did not come into effect until July 22, 1998. Thus, that regulation should not have had a impact on the outcome of this case. Moreover, there was no specific treasury regulation in place relating to a violation of the discharge injunction prior to the commencement of these contempt proceedings in the Bankruptcy Court.

Without a regulation under § 7430 governing the procedure to be followed upon a violation of the discharge injunction, the Debtors were left to their own designs. They did not bring their contempt motion until after pursuing their own remedies through several contacts with the IRS.

They may have exhausted the only administrative remedies available to them at that time.[6] Similar types of activity have been found to be an exhaustion of administrative remedies. *See Matthews*, 184 B.R. at 601.

### CONCLUSION

For the reasons set forth above, we conclude that the Bankruptcy Court did not err in the award of emotional damages against the IRS for its violations of the discharge injunction or in the amount of those awards. We also conclude that the Bankruptcy Court erred in denying the Debtors' claim for attorneys' fees and costs. Accordingly, the Bankruptcy Court's orders are **AFFIRMED** in part, and **REVERSED** and **REMANDED** in part for further proceedings consistent with this opinion.

---

**6.** The situation with respect to exhaustion of administrative remedies is different today. 26 C.F.R § 301.7430–1(d) describes the procedure that a party must follow before attorneys' fees may be awarded against the IRS.

An administrative procedure is available under 26 U.S.C. § 6330 with respect to a notice of levy. 26 C.F.R. § 301.7433–2 provides a procedure for making an administrative claim when the IRS violates § 524.